UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GILBERT and TONYA BADILLO,<br><br>    Plaintiffs,<br><br>  v.<br><br>SERGEANT KEITH STOPKO, et al.,<br><br>    Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 11-4815<br>(JEI/JS)<br><br>**OPINION** |

**APPEARANCES:**

MALLON & TRANGER
By: Thomas J. Mallon, Esq.
86 Court Street
Freehold, NJ 07728
    Counsel for Plaintiffs

OFFICE OF THE NEW JERSEY ATTORNEY GENERAL
By: Luanh L. D'Mello, Deputy Attorney General
RJ Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625
    Counsel for Defendants Stopko, Morello, Sole, Renshaw,
    Torrey, Aitken, and Estrada

NELSON SUPKO & HANLON LLC
By: Christine G. Hanlon, Esq.
830 Broad Street, Suite B
Shrewsbury, NJ 07702
    Counsel for Defendants Orgen, Rivera, and Camacho

SCHENCK PRICE SMITH & KING LLP
By: Cynthia Lynn Flanagan, Esq.
   James A. Kassis, Esq.
220 Park Ave
P.O. Box 991
Florham Park, NJ 07932-0991
    Counsel for Defendants Camilliri, Pickett, Ramirez, Rue,
    Scully, Snowden, and Wisliceny

**IRENAS**, Senior District Judge:

1

Plaintiffs Gilbert and Tonya Badillo (collectively "Plaintiffs") initiated this action pursuant to 42 U.S.C. § 1983 to recover for alleged constitutional violations stemming from an undercover investigation of a large-scale narcotics distribution conspiracy.[1]  Plaintiffs' residence was searched pursuant to a warrant, and Plaintiff Gilbert was arrested and incarcerated for 37 days despite the fact that the search revealed no evidence of illegal activity.  Although Gilbert was indicted for Second Degree Conspiracy to Distribute a Controlled Dangerous Substance, the charge was dismissed six months later.  Pending before the Court are Defendants' Motions to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[2]

I.

According to the Complaint, Operation Real Deal was an investigation by the New Jersey Division of Criminal Justice and the Monmouth County Prosecutor's Office focusing on a cocaine distribution operation in the Long Branch area.[3]  (*Id.* ¶ 18.)

---

[1] The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

[2] Two separate Motions to Dismiss are pending: one filed by Defendants Stopko, Morello, Sole, Renshaw, Torrey, Aitken, Estrada, and joined by Defendants Scully, Rue, Wisliceny, Snowden, Ramirez, and Camilliri; and the other filed by Defendants Orgen, Rivera, and Camacho.

[3] Operation Real Deal began in December 2008 when a confidential informant told law enforcement officers that two individuals known as Savedra and Corea were distributing cocaine. (D'Mello Cert. Ex. A ¶ 8.)  Gilbert Badillo was implicated in the

Operation Real Deal utilized a confidential informant, undercover officers, and intercepts of telephone calls through Communications Data Warrants, applied for by Defendant Stopko of the New Jersey Division of Criminal Justice. (*Id.* ¶¶ 19-21.) Named as Defendants in this action are (1) law enforcement officers from the New Jersey Division of Criminal Justice's Gangs and Organized Crime Bureau, (2) law enforcement officers from the Monmouth County Prosecutor's Office, (3) law enforcement officers from the Monmouth County Sheriff's office, and (4) Patrolman Camacho from the Long Branch Police Department.[4] (*Id.* ¶¶ 2-5.)

Plaintiffs reside at 118 Joline Avenue, Long Branch, New Jersey, with their three children. (Compl. ¶ 1.) Gilbert is five feet five inches tall, weighs 150 pounds, and is 40 years old. (*Id.* ¶ 13.) Gilbert owned a green Ford Explorer, registration number VHU20C. (*Id.* ¶ 15.) Tonya owned a black Nissan Xterra, registration number RMR96L. (*Id.* ¶ 16.) In 2004,

---

investigation when a wiretap of Corea's cell phone revealed incriminating conversations made to a cell phone subscribed to by Gilbert Badillo, in which the speaker was referred to as "Tino." (Id. at ¶ 35(B); Defs' Br. in Support, Dkt. No. 11 at 10, 14.)

[4] The New Jersey Division of Criminal Justice officers include: Keith Stopko, Lieutenant R. Morello, Detective Patrick Sole, Detective Louis N. Renshaw, Detective Torrey, Detective Aitken, and Detective Estrada. Officers from the Monmouth County Prosecutor's Office include: Lieutenant Scully, Sergeant Rue, Detective Art Wisliceny, Detective Snowden, Detective Pickett, Detective Canon, Detective Ramirez, and Detective Camilliri. Officers from the Monmouth County Sheriff's Office are Detective Jose Rivera and Detective Sergeant Derek Orgen.

Plaintiffs started a nonprofit community program known as "Team Jump Off" which assisted neighborhood youths in college placement and employment. (*Id.* ¶ 3.) "Team Jump Off" also conducted gang awareness workshops in conjunction with the City of Long Branch and the Monmouth County Prosecutor's Office. (*Id.* ¶ 4.)

Antinohel Centeno, a.k.a. "Tino", was a member of "Team Jump Off" and a friend of Plaintiffs' son. (*Id.* ¶ 6.) Because of this, he was a regular visitor to Plaintiffs' residence. (*Id.* ¶ 17.) Antinohel lived at 384 Hendrickson Avenue, Long Branch, New Jersey. (*Id.* ¶ 7.) In 2009, he was approximately five feet six inches tall, weighed approximately 325 pounds and was 18 years old. (*Id.* ¶ 12.) Antinohel drove a 1997 black Honda Accord, registration number WAE18L, registered to Candelari D. Morataya of 384 Hendrickson Avenue, Long Branch, New Jersey. (*Id.* ¶ 14.)

In January 2009, Gilbert lent Antinohel a cell phone under his plan with the condition that Antinohel pay a portion of the bill. (*Id.* ¶ 8; Ex. B to Pls' Opp.) In June 2009, after Antinohel did not pay his portion of the bill, Gilbert cancelled the cell phone. (*Id.* ¶ 9.) Antinohel then obtained a cell phone under his own name and address. (*Id.* ¶ 10.)

Defendants monitored incriminating cell phone conversations between Real Deal suspects and "Tino" made on the cell phone registered under Gilbert's name. (*Id.* ¶¶ 22-23.) Defendants Stopko, Morello, Sole, Wisliceny, Rivera, Orgen and Torrey

4

conducted surveillance of Plaintiffs, their home, Tino, and other Real Deal suspects. (*Id.* ¶ 26.) The Complaint alleges that Defendants disregarded clear evidence that Antinohel Centeno was Tino. (*Id.* ¶ 27.)

On August 27, 2009, Defendant Stopko applied for an arrest and search warrant for Gilbert Badillo and Plaintiffs' home. (*Id.* ¶¶ 29-30.) In support of the warrant, the Complaint avers that Defendant Stopko provided the following:

> On 4/17/09 [a]t approximately 1:29 p.m., Det. Torrey observed via the pole camera, a black Honda Accord New Jersey registration WAE18L, registered to Candelari R. Moretaya, 384 Hendrickson Avenue, Long Branch, New Jersey, arrive and park in front of 93 Broadway Avenue. An Hispanic male, matching the physical description of Badillo exited the front passenger-side door of the aforementioned vehicle and proceeded in the direction of 93 North Broadway Avenue (Corea's residence). At the same time, an Hispanic male attired in a black t-shirt and black pants exited the front driver's side door of the vehicle and walked to the middle of the street toward Dontiago's Auto Repair.

(*Id.* ¶¶ 29-30 internal quotations omitted.)

According to the Complaint, the "Hispanic male matching physical description of Badillo" is recorded on the pole camera as being a six foot tall African American male. (*Id.* ¶ 32.) The Hispanic male exiting the driver's side door is Antinohel Centeno, a.k.a. Tino, a five foot six inch male weighing 325 pounds. (*Id.* ¶ 32.) Gilbert alleges in the Complaint that he does not match the physical description of either man captured on

5

the pole camera recording, and therefore this evidence was improperly cited in support of the search and arrest warrant. (*Id.* ¶ 34.)

The Complaint also alleges that Defendants disregarded clear evidence that Antinohel Centeno was Tino.  For example, the Complaint alleges that Defendants learned that the cell phone that was previously listed under Gilbert's name was, after June 2, 2009, "subscribed to by Antinohel Centeno, 384 Hendrickson Avenue, Long Branch, New Jersey."  (*Id.* ¶ 38.)  Defendants' investigation also revealed that the heavy Hispanic male drove a car registered to the same Hendrickson Avenue address.  (*Id.* ¶ 37.)

On August 27, 2009, Defendants Stopko, Renshaw, Aitken, Estrada, Scully, Rue, Snowden, Pickett, Canon, Ramirez, Camilliri, and Camacho executed the search warrant of Plaintiffs' residence in the presence of Plaintiffs and their children.  (*Id.* ¶ 46.)  The Complaint avers that during the search, an unnamed Defendant approached Gilbert and, using abusive language, demanded to know the location of the hidden money and drugs. (*Id.* ¶¶ 48-49, 51.)  Gilbert protested his innocence and stated that he did not have any drugs.  (*Id.* ¶¶ 49, 52.)  According to the Complaint, Defendants then proceeded to search the home again, causing extensive property damage, destroying furniture, and punching holes in walls.  (*Id.* ¶ 53.)  No evidence of illegal

6

activity was uncovered during the search, which lasted approximately three and a half hours. (*Id.* ¶ 47.)

Following the search, Gilbert was arrested and taken to Monmouth County Correctional Facility where his bail was set at $300,000. (*Id.* ¶¶ 55-56.) On September 25, 2009, the Court granted Gilbert's bail reduction motion and reduced the bail to $150,000. (*Id.* ¶ 58.) Bail was posted and Gilbert was released after having been incarcerated for 37 days. (*Id.* ¶ 60.)

On December 23, 2009, an indictment was filed against Gilbert for Second Degree Conspiracy to Distribute a Controlled Dangerous Substance. (*Id.* ¶ 61.) On June 28, 2010, the charge against Gilbert was dismissed. (*Id.* ¶ 64.)

Plaintiffs initiated this action on August 19, 2011 to recover for alleged constitutional violations under the Fourth and Fourteenth Amendments for unlawful search and seizure, false arrest and false imprisonment, malicious prosecution, malicious abuse of process, supervisory liability and failure to intervene. In addition, Plaintiffs' Complaint asserts state law claims for malicious prosecution, malicious abuse of process, intentional infliction of emotional distress, trespass, loss of consortium, and claims pursuant to the New Jersey Civil Rights Act. On November 23, 2011 and December 12, 2011, Defendants filed Motions to Dismiss the Complaint and to Stay Discovery.

**II.**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

When evaluating a Rule 12(b)(6) motion to dismiss, the Court considers "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and

documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  A document that forms the basis of a claim is one that is "integral to or explicitly relied upon in the complaint." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

### III.

Defendants move to dismiss Plaintiffs' federal and state law claims.  The Court will first consider the arguments with respect to Plaintiffs' federal claims before turning to their state law claims.

### A.

#### 1.

Defendants first argue that Plaintiffs' claims are barred by the Eleventh Amendment.  "State governments and their subsidiary units are immune from suit in federal court under the Eleventh Amendment."  *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 253 (3d Cir. 2010).  "Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because official-capacity suits generally represent only another way of pleading an action against the state."  *Id.* at 254 (internal quotations and citation omitted).  However, the Eleventh Amendment does not bar suits against state officials in their individual capacity.  *See Hafer v. Melo*, 502

U.S. 21, 31 (1991).  The Complaint in this action is brought against Defendants in their official and individual capacities. (Compl. ¶ 9.)  Therefore, to the extent that Plaintiffs seek damages against state officials in their individual capacities, the claims are not barred by the Eleventh Amendment.

### 2.

In Counts One and Two, Plaintiffs allege federal constitutional claims for illegal search and seizure. Plaintiffs' claims are twofold:  first, that probable cause did not exist to support the issuance of the search and arrest warrant; and second, that the search warrant was executed in an unreasonable manner causing excessive and unnecessary destruction of Plaintiffs' property.  Plaintiffs also allege federal constitutional claims for false arrest, false imprisonment, and malicious prosecution.  In order to succeed on all of these claims, Plaintiffs must demonstrate the absence of probable cause.  *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009)(malicious prosecution); *Groman v. Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)(false imprisonment); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)(false arrest).

Although Defendants phrase their argument in terms of qualified immunity, they essentially argue that there was no constitutional violation because the search and arrest warrant at the center of this case was supported by probable cause.  Thus,

the Court's analysis must focus on whether the Affidavit of Application for the search and arrest warrant regarding Gilbert Badillo was supported by probable cause.

To succeed on § 1983 claims where a search and arrest are made pursuant to a warrant, a plaintiff must show "(1) that the police officer knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant, and (2) that such statements or omissions are material, or necessary, to the finding of probable cause."[5]  *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000)(internal quotations and citation omitted).  An omission in the warrant application is made with reckless disregard for the truth when an officer withholds a fact that a reasonable person would have known was the kind of thing the judge would want to know.  *Id.* at 788.  An assertion is made with reckless disregard for the truth "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported."  *Id.* (internal quotations and citation omitted).

According to Plaintiffs, Gilbert "was seized on an arrest

---

[5]  Probable cause sufficient to support the issuance of a warrant exists where, based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

warrant lacking any probable cause, despite substantial evidence available to and/or in the possession of Defendants that [Gilbert] was not in fact engaged in any illegal activity and in fact was not 'Tino,' one legitimate target of Operation Real Deal." (Pls' Opp. at 19.) The Complaint points to the allegedly incorrect identification of Gilbert as a six foot tall African-American male exiting a vehicle registered to a Hendrickson Avenue address made in support of the search and arrest warrant that. (Compl. ¶¶ 30-34; Pls' Opp. Ex. D.) The Complaint further alleges that Plaintiffs were known by members of the Monmouth County Prosecutor's Office and the Long Branch Police Department through their community work with "Team Jump Off." Therefore, Plaintiffs suggest that Defendants had reason to doubt that Gilbert was a drug dealer running a stash house as part of a criminal conspiracy. (Compl. ¶ 5; Pls' Opp. at 19.) Finally, the Complaint alleges that Defendants disregarded clear evidence that Antinohel Centeno was in fact Tino. (Compl. ¶¶ 26-28.)

Defendants rely on the Affidavit of Application for their argument that the search and arrest warrant was supported by probable cause. Generally, when considering a motion to dismiss, the court cannot "consider matters extraneous to the pleadings;" however, an "exception exists for documents that are integral to or explicitly relied upon the in the complaint." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 83 n.4 (3d Cir. 2011)(internal

quotations and citation omitted). Here, while the Affidavit of Application for the arrest was not attached to the Complaint, portions of it are quoted at length in it and Plaintiffs' claims rely on it. Therefore, the Court finds it appropriate to consider the Affidavit of Application for Gilbert's arrest at this stage of the litigation.

The force of Plaintiffs' allegations are not that the Affidavit contained inaccuracies or omissions, but rather that Defendants should have been able to conclude from their investigation that Tino was Antinohel Centeno and not Gilbert Badillo. The only inaccuracy identified by Plaintiffs is the misidentification of an African American male as Gilbert. Excising this challenged portion of the Affidavit of Application, the Court concludes for the following reasons that the corrected Affidavit establishes probable cause. *See Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)(requiring that courts remove any falsehoods from the affidavit, then evaluate whether the reformulated affidavit establishes probable cause).

First, the Affidavit includes incriminating phone conversations between a user of a cell phone registered to Gilbert and other Real Deal suspects. Although the Complaint alleges that Gilbert lent a cell phone to Antinohel Centeno, a.k.a Tino, Defendants would have had no way of knowing that Gilbert did not in fact use the phone registered under his name.

13

Second, the new cell phone number registered to Atinohel Centeno was traced back to Gilbert's cell phone plan.  Because Defendants were investigating a large scale drug conspiracy in which the operators intended to be clandestine, this cell phone change was reasonably viewed with suspicion by Defendants, further implicating Gilbert as a participant in the drug conspiracy.  Third, the Affidavit includes details about Gilbert's prior criminal history involving drug offenses.[6]  Finally, other than the misidentification previously noted, Plaintiffs do not make specific factual allegations that Defendants deliberately included any other false information or information about which they had serious doubts.  Likewise, the Complaint does not include factual allegations regarding any specific information that was known to Defendants at the time the Affidavit was filed and yet was withheld from it.

   Based on the information included in the Affidavit, it was not unreasonable for Defendants to conclude that Gilbert Badillo was Tino.  Therefore, the Court finds that even after removing the alleged misidentification, the Affidavit of Application for the search and arrest of Gilbert Badillo was supported by

---

   [6] With respect to Gilbert Badillo's prior criminal history, the Affidavit provides that he "has ten (10) prior arrests including Burglary, Possession of a Weapon and narcotic related offenses.  Gilbert Badillo has six (6) recorded felony convictions for Burglary, possession of CDS on school property and Manufacture/Distribute CDS."  (D'Mello Cert. Ex. A.)

14

probable cause.[7]

The Complaint also asserts a claim for malicious abuse of process. "A section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989). "The gravamen of [an abuse of process claim] is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends." *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). "To establish such a claim, there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." *Ference v. Twp. of Hamilton*, 538 F.Supp.2d 785, 798 (D.N.J. 2008).

Plaintiffs have failed to allege any facts demonstrating a

---

[7] Plaintiffs also allege that the search warrant was executed in an unreasonable manner which violated their Fourth Amendment rights because: (1) the search lasted three and a half hours; (2) furniture was destroyed; (3) holes were made in the walls; and (4) John Doe 3 used abusive language. "The general touchstone of reasonableness which governs Fourth Amendment analysis . . . [also] governs the method of execution of the warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998). The Court finds that Plaintiffs have failed to state a claim against Defendants for unreasonable execution of the warrant. As Defendants point out, "the surreptitious nature of the crimes committed" required a thorough search of the premises. (Defs' br. in Support, Dkt. No. 11 at 40.) Given Defendants' reasonable suspicion that Plaintiffs' residence was being used as a stash house in a large-scale drug conspiracy, Plaintiffs have failed to allege sufficient facts to support a claim for an unreasonable execution of the search warrant.

plausible claim under a malicious abuse of process theory.[8]  The Complaint makes only conclusory allegations that Defendants "maliciously used a 'legal process' to accomplish some ulterior purpose" and that they "made false statements of fact; intentionally, recklessly and/or negligently misrepresented the facts of their encounter with Plaintiffs . . . and mishandled and/or withheld evidence to initiate and/or instigate a criminal prosecution of Plaintiff Gilbert Badillo."  (Compl. Count 10 ¶¶ 2-3.)  Absent any specific factual allegations that Defendants committed an act or threat not authorized by the legal process or that they intended to accomplish some illegitimate objective other than bringing to justice the participants in a drug conspiracy, Plaintiffs' malicious abuse of process claim must fail.

Accordingly, Plaintiffs have failed to allege a violation of the Fourth or Fourteenth Amendments.  Defendants' Motions to Dismiss Plaintiffs' federal and corresponding state law claims for unreasonable search and seizure, unlawful arrest, false

---

[8] In evaluating the sufficiency of a complaint, the Third Circuit has instructed that courts undertake a multi-step process.  *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).  After taking note of the elements of each claim, the court should identify conclusory allegations that are not entitled to the assumption of truth.  *Id.* (quoting *Iqbal*, 129 S.Ct. at 1947, 1950).  Then, the court should assume the truth of the well-pleaded factual allegations and determine if they "plausibly give rise to an entitlement for relief."  *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950).

16

imprisonment, malicious prosecution, and malicious abuse of process will be granted. Because Plaintiffs have failed to allege constitutional violations for unlawful arrest or unreasonable search and seizure, Defendants' Motions to Dismiss the claims for supervisory liability and failure to intervene will also be granted.

**B.**

Defendants also move to dismiss Plaintiffs' remaining state law claims of intentional infliction of emotional distress, trespass and loss of consortium.

To recover under a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant intended to cause emotional distress; (2) the conduct was extreme and outrageous; (3) the actions proximately caused emotional distress; and (4) the emotional stress was severe. *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988). A defendant's conduct must be "'outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community.'" *49 Prospect St. Tenants Assoc. v. Sheva Gardens, Inc.*, 227 N.J. Super. 449, 471 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." *Id.*

17

Viewing the Complaint in the light most favorable to Plaintiffs, there are no allegations of intentional or outrageous conduct by the Defendants sufficient to state a claim for intentional infliction of emotional distress.

Plaintiffs have also failed to state a claim for trespass because Defendants' entry onto Plaintiffs' property was made pursuant to a valid search warrant.  *See* N.J.S.A. 59:3-9.

Finally, in the absence of a viable claim by Plaintiff Gilbert Badillo, his wife's loss of consortium claim must also fail.  *See Sciarrotta v. Global Spectrum*, 194 N.J. 345, 250 n.3 (2008).

Accordingly, Defendants' Motions to Dismiss Plaintiffs' state law claims of intentional infliction of emotional distress, trespass, and loss of consortium will be granted.

**IV.**

For the reasons stated above, Defendants' Motions to Dismiss the Complaint will be granted in full. Plaintiffs will be granted leave to file a motion to amend the Complaint within 30 days of this Opinion.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)(holding that district courts "must permit a curative amendment unless such an amendment would be inequitable or futile.").  An appropriate Order accompanies this Opinion.

Dated:  May 2, 2012

s/Joseph E. Irenas
**JOSEPH E. IRENAS, S.U.S.D.J.**
